# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRELL C. SIMS, | |
| Plaintiff, | |
| v. | Case No. 3:18-CV-1102-NJR-GCS |
| KAREN JAIMET and MARCIA HILL, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Report and Recommendation of Magistrate Judge Gilbert C. Sison (Doc. 42), which recommends the undersigned grant the Motion for Summary Judgment on the issue of exhaustion of administrative remedies filed by Defendant Marcia Hill (Doc. 27). Judge Sison further recommends that the undersigned grant summary judgment to Defendant Karen Jaimet. Plaintiff Terrell Sims filed a timely objection to the Report and Recommendation (Doc. 47). For the reasons set forth below, the Court overrules Sims's objection, adopts the Report and Recommendation, and grants summary judgment to both Defendants.

### BACKGROUND

Plaintiff Terrell Sims, an inmate in the Illinois Department of Corrections, filed this lawsuit on May 10, 2018, alleging Defendant Marcia Hill, LPN, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Doc. 1). Specifically, Sims alleges he was seen by Hill in sick call at Pinckneyville on May 18, 2017, for what he claims were symptoms of pneumonia and that Hill failed to refer him to a

physician for prescription medication (*Id.*). Sims later amended his complaint and added a deliberate indifference claim against Warden Karen Jaimet with regard to the prison's policy that an inmate must see a nurse three times before they can see a doctor unless it is an emergency (Doc. 9).

The only grievance in the record is an emergency grievance that Sims filed on May 19, 2017, regarding his sick call visit with Hill (Doc. 28-1 at p. 3). In his grievance, he complains that he saw "Nurse Marsha" and explained his recurring symptoms, but Nurse Marsha just told him to drink water and exercise (*Id.*). He also complains about the prison's policy requiring him to see the nurse three times (and pay a $5 copay each time) before he can see a doctor (*Id.*). Warden Jaimet received the emergency grievance on June 2, 2017, and on June 5, 2017, found that it was not an emergency (*Id.*). The grievance was returned to Sims on June 8, 2017, and he was instructed to submit it through the normal grievance channels (*Id.*; Doc. 28-2).

An additional paragraph written by Sims appears at the bottom of the May 19, 2017 grievance, which states: "It should be noted that on 6-6-17 I mailed this grievance to Counselor Hill and it was returned to me on 6-16-17 without a response. I then sent it to the Grievance Officer on 6-17-17, it also was returned without a response or explanation on July 6." (Doc. 28-1).

Sims appealed the denial of his grievance, which was received by the Administrative Review Board ("ARB") on August 2, 2017 (Doc. 28-1 at pp. 2-4). The ARB denied the appeal as untimely (*Id.*).

On January 9, 2019, Defendant Hill filed a motion for summary judgment on the

issue of exhaustion of administrative remedies (Doc. 27). Hill argues that Sims did not exhaust his administrative remedies before filing this lawsuit, as his appeal to the ARB was untimely. In response, Sims asserts that after he received the denial of his emergency grievance from Warden Jaimet, he attempted to exhaust his remedies through the normal grievance process (*Id.*). Sims claims that process took until July 6, 2017 (*Id.*). The grievance was then placed in the mailbox for delivery to the ARB that same day (*Id.*). Thus, he argues, he timely filed his appeal (*Id.*).

*Pavey Hearing*

Judge Sison held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on October 16, 2019. Sims testified that after he received the grievance back from Warden Jaimet denying the emergency nature of his grievance, he put the grievance in the mail that night, June 6, 2017, to go to the counselor (Doc. 44 at p. 8). He received it back without a response from the counselor on June 16, 2017 (*Id.* at p. 10). He then sent it to the grievance officer on June 17, 2017, and again received it back without a response (*Id.* at p. 9). Sims testified that he wrote the additional paragraph at the bottom of his grievance on three different dates—June 6, June 16, and June 17 (*Id.*).

Sims also testified that, around the time he received the grievance back from his counselor without a response, he asked her why she did not respond to his grievance and she told him that she did not believe she received it (*Id.* at p. 11). The counselor also allegedly told him that if she received it, then she would have responded to it (*Id.*). Sims testified further that he had no information regarding whether a grievance officer ever received his May 19, 2017 grievance (*Id.* at p. 14).

*The Report and Recommendation*

On October 21, 2019, Judge Sison entered the Report and Recommendation currently before the Court (Doc. 42). Based on the evidence in the record and the testimony at the *Pavey* hearing, Judge Sison concluded that Sims was not a credible witness. Judge Sison noted that, despite testifying he wrote the paragraph at the bottom of his grievance on three separate dates, the paragraph is seamlessly written without any line breaks or gaps. He further found Sims's testimony that he sent the grievance to the counselor on June 6, 2017, to be untrue when the prison's emergency grievance log shows it was not returned to him until June 8, 2017. Additionally, Sims admitted that the counselor told him she did not remember receiving a grievance from him. Finally, Judge Sison found Sims's testimony to be inconsistent when he first testified that he got the grievance back from the grievance officer without a response, but later testified that he did not know whether the grievance officer ever received his grievance (Doc. 44 at p. 14). Based on this evidence, as well as Sims's testimony that he prefers to bypass the normal grievance procedure in favor of filing grievances directly with the warden (*Id.* at p. 18), Judge Sison found that the grievance process was available to Sims but that he failed to fully exhaust the process as to Defendant Hill before filing this lawsuit.

Judge Sison further found that, although Defendant Jaimet, the warden at Pinckneyville, did not file a motion for summary judgment on the issue of exhaustion, summary judgment should also be entered in her favor. Judge Sison noted that Jaimet raised the affirmative defense of exhaustion in her answer and had not withdrawn the defense. Based on the record and the testimony during the *Pavey* hearing, Judge Sison

found there were no grievances other than the May 19, 2017 grievance that relate to Sims's claim against Jaimet. Because that grievance was not fully exhausted, Judge Sison found summary judgment should be entered in Jaimet's favor pursuant to Rule 56(f), which allows the Court to grant summary judgment for a nonmovant or after identifying material facts that are not in dispute, provided that the Court provides notice and offers an opportunity to respond.

*Objections*

Sims filed a timely objection to the Report and Recommendation (Doc. 46). Sims first objects to being subjected to a *Pavey* hearing without the assistance of counsel or being adequately educated on the purpose of a *Pavey* hearing. He claims that had counsel been present, he would not have misspoken at the hearing.

Second, Sims argues it was improper for Judge Sison to assume the bottom paragraph of his grievance was written all on the same day unless his opinion was backed by a handwriting expert. He also asserts that it defies logic that he would not have completed the "minimal task" of putting his grievance through the normal grievance process and that defendants have more to gain by lying than he does.

Third, Sims objects to the recommended dismissal of Defendant Jaimet considering she did not file a motion on her own behalf. He states: "There is only one grievance in this suit, if plaintiff didn't exhaust for one he didn't exhaust for the other." He also asserts that Jaimet's failure to file a motion constitutes an admission that Sims did, in fact, exhaust all administrative remedies.

Finally, Sims asks the Court to deem all of Judge Sison's findings in his Report and

Recommendation void because he never agreed to have a magistrate judge preside over this matter.

In response, Defendant Jaimet notes that Sims never requested counsel or indicated he could not represent himself after his first motion for counsel was denied without prejudice at the outset of this case (Doc. 8). Furthermore, Judge Sison found Sims's testimony was not credible, which was within his authority under *Pavey*. *Pavey*, 544 F.3d at 740-741. Finally, Jaimet argues that the Federal Rules permit the Court to grant summary judgment to a non-movant if the record supports such a finding.

## LEGAL STANDARDS

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## DISCUSSION

As an inmate in the Illinois Department of Corrections ("IDOC"), Sims was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. 20 ILL. ADMIN. CODE § 504.800 *et seq*. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO, who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled

on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c).

Under the standard grievance procedure, an inmate must first file their grievance with the counselor. *Id.* § 504.810(a). The grievance form must contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. *Id.* § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the Grievance Officer. *Id.* § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *Id.* § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." *Id.* § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under

the circumstances." *Id.* § 504.850(e).

In this case, Sims has admitted there is only one grievance that is relevant to his claims in this suit—the May 19, 2017 grievance that he filed as an emergency (*See* Doc. 46). The warden determined the grievance did not constitute an emergency and instructed Sims to refile it using the normal grievance procedure. IDOC records show the grievance was returned to Sims with the warden's determination on June 8, 2017 (Doc. 28-2). Sims's handwritten notation at the bottom of his grievance, however, states that he mailed the grievance to the counselor on June 6, 2017 (Doc. 28-1 at p. 4). Both of these things cannot be true; Sims could not have mailed the grievance to his counselor on June 6 if it was not returned to him until June 8.

Judge Sison, who was in the best position to assess Sims's reliability, found that he was not a credible witness. *See Kraushaar v. Flanigan*, 45 F.3d 1040, 1052-53 (7th Cir. 1995). Contrary to Sims's argument that Judge Sison should not have made that credibility determination without a handwriting expert's opinion, at *Pavey* hearings, a court is permitted to make findings of fact and credibility assessments of witnesses. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). Magistrate judges are in the best position to assess a witness's credibility because they have the opportunity "to observe the verbal and nonverbal behavior of the witnesses . . . [including their] reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements." *Kraushaar*, 45 F.3d at 1052-53.

In this case, Judge Sison assessed the credibility of Sims's statements and found them untrue. It is not the Court's role at this juncture to second-guess Judge Sison's

credibility determinations. *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995) ("The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations"). Accordingly, the Court defers to Judge Sison's determination that Sims's testimony regarding his efforts to exhaust his grievance was not credible and finds that Sims did not exhaust his administrative remedies as to Defendant Hill when he did not submit his grievance through the normal channels.

The Court also overrules Sims's objection with regard to the recommendation that summary judgment be granted in favor of Defendant Jaimet. Under Rule 56(f), a court can grant summary judgment *sua sponte* to a non-movant after giving notice and a reasonable time to respond. FED. R. CIV. P. 56(f)(1). Judge Sison's Report and Recommendation provided that notice, and Sims was given an opportunity to respond. Sims has not provided evidence of any other grievance that might have exhausted his claim against Defendant Jaimet, and in fact admits that "[t]here is only one grievance in this suit, if Plaintiff didn't exhaust for one he didn't exhaust for the other." The Court agrees and finds he exhausted as to neither.

The Court also finds no merit to Sims's argument that he should not have been subjected to a *Pavey* hearing without the assistance of counsel or being adequately educated on the purpose of a *Pavey* hearing. The docket entry setting the hearing clearly states that it was a hearing on Defendant's motion for summary judgment, and Sims has not filed a motion for appointment of counsel in the past year and a half. *See Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010) (there is no constitutional or statutory right to appointment of counsel in federal civil cases).

Finally, the Court refuses to deem all of Judge Sison's findings in his Report and Recommendation void because Sims never agreed to have a magistrate judge preside over this matter. The undersigned is the presiding district judge; Defendants' motion was referred to Judge Sison for a Report and Recommendation on the matter, and the Court is free to do as it sees fit with the magistrate judge's recommendation. *See* 28 U.S.C. § 636(b)(1)(B); *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). In this case, the undersigned agrees with Judge Sison's findings and conclusions. Accordingly, the Court adopts the Report and Recommendation in its entirety.

## Conclusion

For the reasons set forth above, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Gilbert C. Sison (Doc. 42) and **GRANTS** the Motion for Summary Judgment filed by Defendant Marcia Hill. The Court further grants judgment as a matter of law to Defendant Karen Jaimet. Plaintiff Terrell Sims shall recover nothing, and the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: November 25, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**